BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

IN RE INTEL CORP.                :
MICROPROCESSOR                   :
ANTITRUST LITIGATION             :    MDL DOCKET NO. 1717
                                 :

## PLAINTIFF MICHAEL K. SIMON'S RESPONSE TO MOTION OF PLAINTIFF JUSTIN SUAREZ TO TRANSFER THIS LITIGATION TO THE SOUTHERN DISTRICT OF CALIFORNIA, AND IN FURTHER SUPPORT OF HIS MOTION TO TRANSFER THIS LITIGATION TO THE DISTRICT OF DELAWARE

### I.  Introduction

Michael K. Simon ("Simon"), plaintiff in *Michael K. Simon v. Intel Corporation*, *No.* 1:05-CV-00490 (the "Simon Action"), respectfully submits this memorandum in response to the motion of plaintiff Justin Suarez to transfer this litigation to the Southern District of California, and in further support of his motion to transfer this litigation to the District of Delaware.

### II.  Transfer and Consolidation of the Actions for Coordinated Pretrial Proceedings is Appropriate

There is no question that consolidation of these actions for coordinated pretrial proceedings is appropriate.[1]  28 U.S.C. § 1407 authorizes this Panel to transfer and

---

[1] Advanced Micro Devices, Inc. and AMD International Sales & Service, Ltd. (collectively "AMD") is the only remaining plaintiff that does not want its case coordinated as part of an MDL proceeding with the consumer class actions, but instead prefers to have its case maintained separately before Judge Farnan, while the class actions are consolidated before him.  Plaintiff Advanced Micro Devices, Inc.'s Response to Plaintiffs Michael Brauch and Andrew Meimes' Motion to Transfer and Coordinate or Consolidate for Pretrial Proceedings in the Northern District of California ("AMD Br."), p. 3.  Plaintiff Simon has no objection to the Panel doing this, if it so wishes.  Alternatively, it could consolidate all such cases before Judge Farnan in a single MDL proceeding, but have AMD's case proceed on a separate track within that MDL, which is what happened, for example, in the managed care litigation centralized before Judge

consolidate two or more civil actions for coordinated pretrial proceedings upon a determination that (1) they "involv[e] one or more common questions of fact," (2) transfer will further "the convenience of the parties and witnesses," and (3) transfer "will promote the just and efficient conduct of the actions." Each of the actions involve common questions of fact relating to Intel's alleged anticompetitive practices concerning the x86 Microprocessor Market. Their transfer and consolidation before a single tribunal will serve the interests of all parties and witnesses as well as the interests of justice in the efficient and economic handling of this litigation. Accordingly, all of the pending actions, as well as any subsequent "tag along" proceedings, should be transferred and consolidated for coordinated pretrial proceedings before a single forum.

### III. The District of Delaware is the Proper Forum for the Coordinated Pretrial Proceedings

Transfer and consolidation of multidistrict proceedings in a particular district is appropriate where that district is the "center of gravity" of the litigation. *In re Cigarette Antitrust Litig.*, No. 1342, 2000 WL 1508296, at *1 (J.P.M.L. June 7, 2000); *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 568 F. Supp. 1250, 1251-52 (J.P.M.L. 1983); *In re Food Fair Sec. Litig.*, 465 F. Supp. 1301, 1306 (J.P.M.L. 1979); *In re West Coast Bakery Flour Antitrust Litig.*, 368 F. Supp. 808, 809 (J.P.M.L. 1974). The factors to be considered in determining the center of gravity include the caseloads of the proposed transferor and transferee courts; the expertise of a particular court in the areas of law and procedure governing the litigation; and the convenience of the parties,

---

centralized before Judge Moreno in the Southern District of Florida, involving a distinct "subscriber track" and a distinct "provider track." *In re Managed Care Litig.*, 209 F.R.D. 678, 681 (S.D. Fla. 2002), *aff'd in part and rev'd in part sub nom. Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004), *cert. denied sub nom. United Health Group, Inc. v. Klay*, 125 S.Ct. 877 (2005).

witnesses and documents. *See, e.g., In re Southeast Hotel Props. P'ship Investor Litig.*, 796 F. Supp. 538, 539 (J.P.M.L. 1993); *In re Computervision Corp.*, 814 F. Supp. at 86; *In re Asbestos Prods. Liab. Litig. (No. VI)*, 771 F. Supp. 415, 422-23 (J.P.M.L. 1991); *In re Vernitron Sec. Litig.*, 462 F. Supp. 391, 394 (J.P.M.L. 1978); *In re General Aircraft Corp. Antitrust/Tort Claims Act Litig.*, 449 F. Supp. 604, 606 (J.P.M.L. 1978); *In re Wiring Device Antitrust Litig.*, 444 F. Supp. 1348, 1350-51 (J.P.M.L. 1978); *In re New Your City Mun. Sec. Litig.*, 439 F. Supp. 267, 270 (J.P.M.L. 1977); *In re Peruvian Road Litig.*, 380 F. Supp. 796, 798 (J.P.M.L. 1974); *In re Sta-Power Indus. Sec. & Antitrust Litig.*, 372 F. Supp. 1398, 1399 (J.P.M.L. 1974).

As discussed below, plaintiff Simon respectfully submits that these factors clearly support transfer to the District of Delaware.

> A.  **A Clear Majority of the Parties Favor the District of Delaware Where the Majority of the Cases are Pending**

The Panel clearly has a preference for transferring cases to the forum in which the majority of related cases are pending. *See In re Phonometronics, Inc., Elec. Long Distance Call Cost Computer and Recorder Patent Litig.*, No. 1141, 1997 WL 83673 (J.P.M.L. Feb. 19, 1997) (transferring case to Southern District of Florida where 20 other cases were already pending); *see also In re Asbestos Prods. Liab. Litig.*, 771 F. Supp. 415, 422-23 (J.P.M.L. 1991) (transferring thousands of cases to Eastern District of Pennsylvania based, in part, on majority of existing cases having been filed in Eastern District of Pennsylvania); *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.*, 844 F. Supp 1553 (J.P.M.L. 1994) (transferring 29 actions to District of Minnesota where over 100 actions were already pending); *In re General Aircraft Corp. Antitrust/Tort Claims Act Litig.*, 449 F. Supp. 604, 606 (J.P.M.L. 1978) (transferring one

action to district where another action was pending based upon choice of majority of parties).

Here, the majority of cases have been filed in the District of Delaware, and ***all*** parties who have filed papers before the Panel with the sole exception of plaintiff Suarez, now agree that the District of Delaware is the appropriate forum. Given the consensus of all but one party (the forty-eighth plaintiff to file in this litigation), it is clear that the District of Delaware is the appropriate forum for this litigation.

### B. The District of Delaware Has the Resources and Judicial Expertise to Properly Conduct This Case

Transfer to a district court with the skill and experience in handling complex actions should be a determinative factor in the Panel's decision. There is no doubt that the District of Delaware has extensive experience in managing consolidated multi-district litigation. *See, e.g., In re Pharmastem Therapeutics, Inc., Patent Litig.*, 360 F.Supp.2d 1362 (J.P.M.L. 2005) (transferring cases to the District of Delaware); *In re Reliance Group., Inc., Sec. Litig.*, No. 1304, 1999 U.S. Dist. LEXIS 19205 (J.P.M.L. Dec. 9, 1999) (same); *In re Warfarin Sodium Antitrust Litig.*, No. 1232, 1998 U.S. Dist. LEXIS 8559 (June 3, 1998) (same); *In re Manchak Patent Litig.*, No. 1228, 1998 U.S. Dist. LEXIS 8560 (June 3, 1998) (same).

The District of Delaware conducts its trials expeditiously, has significant experience in corporate litigation and is otherwise efficient at moving its docket. *See* docket statistics attached hereto as Exhibit A. Indeed, for the twelve months ending September 30, 2004, only 3.4% of the civil cases in the District of Delaware were over three years old. By contrast, 4.7% of the civil cases in the Southern District of California were older than three years. *Id.*

Additionally, the criminal docket per judge was far more burdensome in the Southern District of California than in the District of Delaware, given that the Southern District of California had more than nine times the number of felony cases filed per judge compared to the District of Delaware. *See id.* In view of the fact that the Speedy Trial Act mandates that preference be given to the disposition of criminal cases, 18 U.S.C. § 3161, this greater criminal caseload in the Southern District of California will be a continuing source of demands upon the resources of that court.

In his motion, plaintiff Suarez attempts to circumvent the clearly greater burden being experienced by the Southern District of California by arguing that while "the Southern District has not traditionally accepted large numbers of MDL cases, five new District Judges have recently been added to the District and caseloads have been stabilized." Brief in support Plaintiff Suarez Motion to Transfer and Consolidate or Coordinate for Pretrial Proceedings in the Southern District of California Pursuant to 28 U.S.C. § 1407 ("Suarez Motion"), p. 8. This point, however, only serves to underscore the appeal of the transfer of this litigation to the District of Delaware, which has only one pending MDL, and its assignment to Judge Farnan, who has served on the federal bench for 20 years and presided over numerous complex cases throughout his tenure.

C.   **The District of Delaware is the Most Convenient Forum**

The convenience of the parties and witnesses is an essential factor used in determining to which district related actions should be transferred. 28 U.S.C. § 1407(a) (related actions may be transferred to a district for coordinated proceedings upon a determination that the transfer "will be for the convenience of parties and witnesses and

will promote the just and efficient conduct of such actions"). The District of Delaware, where the majority of the actions are pending, is clearly the most convenient forum for the pretrial prosecution of these actions. The District of Delaware is centrally located and readily accessible by both air and train, making it convenient for the parties and witnesses and thus a preferable forum for this litigation.

Plaintiff Suarez argues that because Hewlett-Packard and Acer America are located in California, the Southern District of California is the most convenient forum. Suarez Motion at 6. This argument, however, fails to acknowledge AMD's observation that although "Hewlett-Packard and Acer America, are headquartered in northern California, their relevant operating divisions and documents are located elsewhere". AMD Brief, p. 12. Thus, the discovery in this litigation is not likely to be concentrated upon witnesses or documents located in the State of California, let alone the Southern District of California.[2]

For all of the reasons set forth above, the District of Delaware is the most convenient forum for litigation of all related actions. The motion of plaintiff Suarez to transfer these proceedings to the Southern District of California is nothing more than a self-serving attempt to transfer the litigation to his backyard. While that may be the most convenient location for his counsel, whose office is located in San Diego, California, it is far less convenient for all of the other parties and witnesses, especially in view of the pendency of the *AMD* action in the District of Delaware.

---

[2] Finally, plaintiff Suarez also contends that the Southern District of California would be a proper forum because "the parties could be confident that no hint of Silicon Valley partiality" would affect the proceedings. *Suarez Motion* at 7. To the extent that Suarez is suggesting that proximity to Silicon Valley could somehow prejudice the proceedings, this argument also favors the transfer of this litigation to the District of Delaware, a forum that is outside the State of California and thus even more removed from this threat of alleged contamination.

### IV. The Panel Should Act Summarily in Transferring These Cases To, and Consolidating Them In, The District of Delaware

Finally, plaintiff Simon, joins in the motion of Michael Brauch and Andrew Meimes to consolidate and transfer theses actions, without oral argument, pursuant to Panel Rule 16.1(c). Panel Rule 16.1(c) allows the Panel to dispense with the presentation of oral argument on a transfer motion if "the dispositive issues(s) have been authoritatively decided" or "the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument." Both prongs are satisfied here. The dispositive legal/factual issues do not present a novel legal issue. Furthermore, as reflected in the various briefs submitted to the Panel, based on the consensus among parties that has been achieved, the decisional process would not be assisted by oral argument. Therefore, in the interest of judicial economy, the Panel should dispense with oral argument pursuant to Panel Rule 16.1(c), and should transfer to and consolidate these cases in the District of Delaware.

### V. Conclusion

For all of the foregoing reasons, plaintiff Simon respectfully requests that all related actions be consolidated and transferred to the District of Delaware.

Dated: August 9, 2005

>Respectfully submitted,
>**BARRACK RODOS & BACINE**
>
>By: _____
>Gerald J. Rodos
>Mark R. Rosen
>Jeffrey B. Gittleman
>Beth R. Targan
>3300 Two Commerce Square
>2001 Market Street
>Philadelphia, PA 19103
>Phone: (215) 963-0600
>Fax: (215) 963-0838
>
>**ROSENTHAL, MONHAIT, GROSS & GODDESS, P.A.**
>Jeffrey S. Goddess
>Mellon Bank Center
>919 Market Street, Suite 1401
>P.O. Box 1070
>Wilmington, DE 19899-1070
>Phone: (302) 656-4433
>Fax: (302) 658-7567
>
>*Attorneys for Plaintiff Michael K. Simon*
>in the *Simon* Action

# EXHIBIT A

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|---|
| DELAWARE | | | 2004 | 2003 | 2002 | 2001 | 2000 | 1999 | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | | 1,797 | 1,362 | 2,028 | 1,004 | 1,303 | 1,033 | | |
| | Terminations | | 1,516 | 1,507 | 1,478 | 1,020 | 955 | 861 | | |
| | Pending | | 2,085 | 1,836 | 1,999 | 1,477 | 1,502 | 1,154 | | |
| | % Change in Total Filings | Over Last Year | | 31.9 | | | | | 5 | 2 |
| | | Over Earlier Years | | | -11.4 | 79.0 | 37.9 | 74.0 | 4 | 2 |
| | Number of Judgeships | | 4 | 4 | 4 | 4 | 4 | 4 | | |
| | Vacant Judgeship Months** | | .0 | 1.9 | 3.1 | .0 | .0 | .0 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 449 | 340 | 507 | 251 | 326 | 258 | 52 | 3 |
| | | Civil | 414 | 306 | 462 | 233 | 307 | 240 | 29 | 3 |
| | | Criminal Felony | 29 | 25 | 38 | 18 | 19 | 18 | 91 | 6 |
| | | Supervised Release Hearings** | 6 | 9 | 7 | - | - | - | 90 | 4 |
| | Pending Cases | | 521 | 459 | 500 | 369 | 376 | 289 | 20 | 2 |
| | Weighted Filings** | | 534 | 424 | 516 | 379 | 389 | 320 | 31 | 1 |
| | Terminations | | 379 | 377 | 370 | 255 | 239 | 215 | 64 | 4 |
| | Trials Completed | | 19 | 23 | 18 | 16 | 19 | 13 | 47 | 2 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 9.1 | 8.3 | 9.8 | 8.0 | 6.6 | 6.0 | 68 | 2 |
| | | Civil** | 14.0 | 11.2 | 8.2 | 12.6 | 10.9 | 11.5 | 93 | 5 |
| | From Filing to Trial** (Civil Only) | | 26.0 | 24.0 | 22.5 | 21.0 | 24.0 | 19.7 | 58 | 3 |
| OTHER | Civil Cases Over 3 Years Old** | Number | 65 | 66 | 99 | 77 | 70 | 38 | | |
| | | Percentage | 3.4 | 3.9 | 5.4 | 5.5 | 4.9 | 3.5 | 43 | 3 |
| | Average Number of Felony Defendants Filed Per Case | | 1.2 | 1.3 | 1.1 | 1.3 | 1.2 | 1.3 | | |
| | Jurors | Avg. Present for Jury Selection | 38.50 | 34.98 | 33.84 | 32.68 | 35.75 | 30.23 | | |
| | | Percent Not Selected or Challenged | 20.9 | 24.0 | 24.4 | 19.9 | 28.5 | 15.1 | | |

| 2004 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 1655 | 20 | 1 | 238 | 10 | 5 | 28 | 72 | 56 | 198 | 135 | 2 | 890 |
| Criminal* | 115 | 9 | 5 | 40 | - | 4 | 24 | ** | 2 | 19 | - | 6 | 6 |

Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not
* See "Explanation of Selected Terms"

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | | \multicolumn{6}{c|}{12-MONTH PERIOD ENDING SEPTEMBER 30} | | |
|---|---|---|---|---|---|---|---|---|---|---|
| \multicolumn{3}{|c|}{CALIFORNIA SOUTHERN} | 2004 | 2003 | 2002 | 2001 | 2000 | 1999 | \multicolumn{2}{c|}{Numerical Standing} |
| | | | | | | | | | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | \multicolumn{2}{|c|}{Filings*} | 7,964 | 8,202 | 8,360 | 6,442 | 6,686 | 6,762 | | |
| | \multicolumn{2}{|c|}{Terminations} | 8,034 | 8,106 | 8,191 | 6,393 | 6,579 | 6,513 | | |
| | \multicolumn{2}{|c|}{Pending} | 3,506 | 3,592 | 3,522 | 3,462 | 4,087 | 3,489 | | |
| | % Change in Total Filings | Over Last Year | | -2.9 | | | | | 67 | 12 |
| | | Over Earlier Years | | | -4.7 | 23.6 | 19.1 | 17.8 | 30 | 6 |
| | \multicolumn{2}{|c|}{Number of Judgeships} | 13 | 13 | 8 | 8 | 8 | 8 | | |
| | \multicolumn{2}{|c|}{Vacant Judgeship Months**} | 9.1 | 12.3 | .0 | .0 | .8 | 13.1 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 612 | 631 | 1,045 | 805 | 836 | 845 | 15 | 4 |
| | | Civil | 219 | 217 | 357 | 327 | 348 | 377 | 80 | 11 |
| | | Criminal Felony | 262 | 274 | 437 | 478 | 488 | 468 | 5 | 2 |
| | | Supervised Release Hearings** | 131 | 140 | 251 | - | - | - | 1 | 1 |
| | \multicolumn{2}{|c|}{Pending Cases} | 270 | 276 | 440 | 433 | 511 | 436 | 84 | 12 |
| | \multicolumn{2}{|c|}{Weighted Filings**} | 481 | 478 | 785 | 724 | 726 | 750 | 51 | 9 |
| | \multicolumn{2}{|c|}{Terminations} | 618 | 624 | 1,024 | 799 | 822 | 814 | 10 | 4 |
| | \multicolumn{2}{|c|}{Trials Completed} | 25 | 23 | 40 | 44 | 55 | 47 | 22 | 3 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 3.3 | 3.3 | 3.8 | 4.0 | 3.7 | 3.8 | 1 | 1 |
| | | Civil** | 6.9 | 6.5 | 6.4 | 6.9 | 7.5 | 7.8 | 9 | 1 |
| | \multicolumn{2}{|c|}{From Filing to Trial** (Civil Only)} | 30.0 | 23.5 | 21.0 | 24.0 | 26.0 | 28.0 | 72 | 10 |
| OTHER | Civil Cases Over 3 Years Old** | Number | 97 | 94 | 92 | 68 | 38 | 27 | | |
| | | Percentage | 4.7 | 4.4 | 4.3 | 3.5 | 2.0 | 1.3 | 57 | 5 |
| | \multicolumn{2}{|c|}{Average Number of Felony Defendants Filed Per Case} | 1.1 | 1.1 | 1.1 | 1.1 | 1.1 | 1.2 | | |
| | Jurors | Avg. Present for Jury Selection | 59.13 | 55.51 | 58.29 | 58.31 | 35.52 | 54.40 | | |
| | | Percent Not Selected or Challenged | 44.5 | 45.3 | 44.3 | 45.9 | 45.7 | 45.7 | | |

| 2004 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 2845 | 97 | 3 | 766 | 99 | 29 | 68 | 240 | 176 | 157 | 870 | 11 | 329 |
| Criminal* | 3400 | 2206 | 7 | 15 | 20 | 7 | 709 | ** | 3 | 382 | 13 | 12 | 26 |

Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not
* See "Explanation of Selected Terms"