BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE INTEL x86<br>MICROPROCESSOR LITIGATION | MDL Docket No. ___1717__ |

**BRIEF IN SUPPORT PLAINTIFF SUAREZ' MOTION TO
TRANSFER AND CONSOLIDATE OR COORDINATE
FOR PRETRIAL PROCEEDINGS IN THE SOUTHERN
DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1407**

INTRODUCTION

Plaintiff Justin Suarez in *Suarez v. Intel Corporation*, Case No. 05-CV-1507 (S.D. Ca.), respectfully moves this Panel, pursuant to 28 U.S.C. § 1407 and Rule 7.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, to transfer all pending and yet-to-be filed federal class actions against Intel Corporation ("Intel"), alleging anticompetitive conduct or unfair business practices relating to x86 Microprocessors, to the United States District Court for the Southern District of

1

California.

## BACKGROUND OF THE LITIGATION

1.  This litigation involves Intel's alleged restraint of trade, monopolization, exclusive dealing, and anticompetitive practices, all relating to Intel x86 microprocessors, and brought on behalf of both direct and indirect purchasers of that product and by rival manufacturer, Advanced Micro Devices, Inc. ("AMD") (*Advanced Micro Devices, Inc. vs. Intel Corporation*, No. 1:2005CV00470, D. Del., filed June 27, 2005). Plaintiff Suarez asserts, on behalf of himself and all others similarly situated, that he suffered losses as a result of these practices by Intel. Suarez asserts claims on behalf a nationwide class of indirect purchasers under California law, the Cartwright Act, Cal. Bus. & Prof. Code Section 16700, et seq., under the principles set forth by the Supreme Court in *Phillips Petroleum Co. v. Shutts* 472 U.S. 797, 105 S.Ct. 2965 (1985) for adjudication of nationwide classes under state law. Federal jurisdiction is asserted pursuant to 28 U.S.C. Section 1332(d), as the amount of controversy exceeds the sum or value of $5 million, exclusive of interest and costs, and there is a diversity of citizenship between defendant and members of the class.

There are at least 47 other potential class actions against Intel that allege similar conduct on the part of Intel and raise nearly identical issues. Centralization of pre-trial proceedings is particularly appropriate at this time because all cases are in the early stages. Therefore, coordination and transfer for consolidation will:

1.  Save substantial time and resources for the parties and the judicial system;
2.  Not delay the proceedings;
3.  Eliminate potential confusion among class members;
4.  Prevent duplication of discovery;
5.  Promote the convenience of the parties and the witnesses; and
6.  Promote the just and efficient resolution of all Related Cases.

Both Intel and AMD have their corporate headquarters in California. Plaintiff Suarez recommends the Southern District of California as the most appropriate transfer forum as it is convenient for the witnesses and the parties, while also free from potential juror local or industry bias. Given the likelihood of substantive consolidation of the cases, a trial is likely in the transferee forum, thus consideration of *Lexecon Inc. et al . v. Milberg Weiss Bershad Hynes & Lerach* does not appear relevant, while jury considerations remain pertinent. 521 U.S. 1150 (1997).

## ARGUMENT

I. **THE INTEL x86 MICROPROCESSOR CLASS ACTIONS SHOULD BE TRANSFERRED AND COORDINATED OR CONSOLIDATED FOR PRETRIAL PROCEEDINGS TO AN MDL PROCEEDING IN THE SOUTHERN DISTRICT OF CALIFORNIA**

Section 1407(a) provides that "civil actions involving one or more common questions of fact...may be transferred to any district for coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a). Transfer and consolidation are appropriate where they "will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of [the] actions." *Id*. As explained below, the Intel x86 Microprocessor-related class actions currently pending in the Southern District of California, the Northern District of California and the District of Delaware meet these criteria, as does the action filed against Intel by its competitor, Advanced Micro Devices, Inc. ("AMD"), in the District of Delaware.

The pending actions listed in the Schedule of Actions, attached hereto as Exhibit A, assert common questions of fact, and coordination or consolidation of the related cases against Intel will promote efficiency and convenience for the parties, the witnesses and the courts. The requirements for transfer and consolidation are thereby

3

satisfied.

### A. The Actions Involve Common Questions of Fact and Law

For transfer to be proper under § 1407(a), the cases at issue must involve "one or more common questions of fact." This requirement is satisfied here, where the actions at issue contain identical allegations of restraint of trade, monopolization, exclusive dealing, and anticompetitive practices, all relating to Intel x86 Microprocessors, and brought on behalf of both direct and indirect purchasers of that product and by rival manufacturer, AMD.

In each case here, the factual issues are virtually identical. Each of the complaints contain common allegations arising out of some or all of the following factual issues:

1. Whether Intel formed and operated an illegal trust in restraint of trade in x86 microprocessors within the Class Period;

2. Whether Intel unlawfully acquired or maintained or attempted to unlawfully acquire or maintain a monopoly in the production and sale of x86 microprocessors within the Class Period;

3. Whether Intel engaged in exclusive dealing sales or contracts, agreements or understandings that might substantially lessen competition or tend to create a monopoly in x86 microprocessor chips within the State of California and the United States within the Class Period;

4. The existence, duration and illegality of the restrictions, limitations, obligations, conditions, agreements, understandings, trusts and course of conduct engaged in by Intel;

5. Whether plaintiff and the plaintiff class sustained antitrust injuries as a result of Intel's conduct within the class period;

6. The appropriate amount and/or measure of damages; and

7.  The appropriate nature of class wide equitable relief.

The transfer of multiple antitrust actions sharing similar allegations to a single forum under section 1407 is commonplace and proper where, as here, it will prevent duplicative discovery and will eliminate the possibility of inconsistent rulings, including class action determinations by courts of coordinate jurisdiction. *Ford Motor Co. Crown Victoria Police Interceptor Products Liability Litig.*, 229 F. Supp. 2d 1377 (J.P.M.L. 2002) (finding centralization "necessary in order to . . . prevent inconsistent or repetitive pre-trial rulings (such as those regarding class certification) . . .").

The broadly correlative questions of fact and law presented by the Intel x86 Microprocessor-related actions make transfer and consolidation of these cases appropriate. See *In re Beef Indus. Antitrust Litig.*, 419 F. Supp. 720, 721 (J.P.M.L. 1976) (common factual issues concerning alleged antitrust conspiracy necessitated transfer).

### B. Transfer and Coordination or Consolidation Will Further the Convenience of Parties and Witnesses

Transfer and coordination or consolidation for pretrial proceedings of these actions will also serve "the convenience of the parties and witnesses" in accordance with the second requirement of § 1407(a). Defendant Intel is a Delaware corporation headquartered in Santa Clara, California in the Northern District of California. Its primary rival, AMD, initiated these actions by filing a lawsuit in the District of Delaware that brought many of the alleged anticompetitive acts to light. Like Intel, AMD is a Delaware corporation headquartered in the Northern District of California, specifically in Sunnyvale, California.

In contrast to either the District of Delaware or the Northern District of California, a Southern California forum would promote the orderly resolution of claims with neither undue hardship on witnesses nor undue benefit or convenience to the Defendant. Further, the potential jury pool in the Southern District appears more likely to unbiased due to the very pervasiveness of the microprocessor industry in Northern California.

Southern California is home to many computer hardware and microprocessor industry representatives, who are also parties of interest in this case. Many if not all of the already filed Complaints list the Tier One OEMs and refer repeatedly to anticompetitive acts aimed at them. Those companies include: Hewlett-Packard, Dell, IBM/Lenovo, Fujitsu/Siemens, Acer, Toshiba, NEC, Sony and Gateway/eMachines. See, e.g. *Advanced Micro Devices, Inc. vs. Intel Corporation*, No. 1:2005cv00470, D. Del., Compl., pg. 12. Of these potential witnesses, many have a presence in the Southern District of California or in adjacent Orange County, California in the Southern Division of the Central District. For example, within San Diego and Orange Counties: both Hewlett-Packard and Sony maintain large manufacturing and development operations in the San Diego Metro area, Gateway/eMachines, headquartered in San Diego until late 2004, is now located in nearby Irvine, Toshiba's Digital Products and Electronic Components Divisions are also based in Irvine. Located elsewhere in California: Acer's U.S. base of operations is in San Jose, Fujitsu-Siemens Computers USA is located in Sunnyvale, Hitachi Computer Products (America) is headquartered in Brisbane (near South San Francisco), and the NEC Solutions division is based in Rancho Cordova (near

Sacramento).

Southern California is a logistically convenient location for parties located in Northern California, Southern California and elsewhere in the United States. See *In re Worldcom, Inc., Sec. And ERISA Litig,*. 226 F. Supp. 2d 1352, 1355 (J.P.M.L. 2002) (noting that "litigation of this scope will benefit from centralization in a major metropolitan center that is well served by major airlines, provides ample hotel and office accommodations, and offers a well developed support system for legal services"). Frequent flight service is offered into San Diego International Airport, which is located only three miles from the Southern District Courthouse. Accommodations are available at more than 400 hotels and motels in the local area.[1] This is particularly significant when compared to the limited availability of hotels proximate to the U. S. District Courthouse in San Jose. There is no reason to require the parties and counsel to endure either lengthy travel to infrequently served Delaware, or the congestion and inconvenient accommodations common to the San Jose area.

## C. Transfer and Coordination or Consolidation Will Promote Just and Efficient Conduct of These Actions

The choice of San Diego serves the goals of justice and objectivity in judicial proceedings. In contrast to previous causes of action against Intel that have been filed in Northern California, near Intel's Santa Clara headquarters, and in Delaware, where Intel is incorporated, San Diego would provide a forum where the parties could be confident that no hint of Silicon Valley partiality would affect the proceedings. Although Delaware arguably suffers no such issues, it would be logistically difficult

---

[1] San Diego Convention & Visitor's Bureau, *2004 Visitor Industry General Facts*, http://www.sandiego.org/pdf/2004GeneralFacts.pdf

for both witnesses and counsel.

Judicial efficiency is served by the transfer and coordination of these actions to the Southern District of California. Although the Southern District has not traditionally accepted large numbers of MDL cases, five new District Judges have recently been added to the District and caseloads have been stabilized. District Judges have publicly indicated that the Southern District would now entertain MDL proceedings. The goal of efficiency in judicial proceedings would be advanced by the equitable disposition of this MDL case to the Southern District.

## II. THE PANEL SHOULD TRANSFER THESE CASES TO AN MDL PROCEEDING IN THE SOUTHERN DISTRICT OF CALIFORNIA

The Southern District of California is the most appropriate jurisdiction for this litigation for five principal reasons. First, California was the jurisdiction chosen by a large number of the plaintiffs filing Intel x86 Microprocessor class action complaints. Second, a number of the complaints, including AMD's and Suarez', allege violations of California law. Third, witnesses within the high-tech industry have a significant presence in Southern California. Fourth, the Southern District offers an advantage over the Northern District due to the avoidance of factors based on location. Indeed, in the event of a trial it would appear that a Southern District jury might be easier to seat due to the very pervasiveness of the microprocessor industry in Northern California. Fifth, the equitable distribution of cases within the District Courts favor the transfer of these cases to the Southern District. Finally, "while it is unquestionably true that other districts would be more convenient for individual (parties), we 'must weight the interests of all of the (parties) and must consider multiple litigation as a whole in light of the purpose of the law.'" *In re Master Key,*

320 F.Supp. 1404, 1406 (J.P.M.L. 1971), citing *In re Children's Books Litigation*, 297 F.Supp. 385 (J.P.M.L. 1968).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Panel order the transfer and coordination or consolidation of all pending and yet-to-be filed Intel x86 Microprocessor federal class actions to an MDL proceeding in the Southern District of California.

DATED: August 3, 2005            Respectfully submitted,

Michael L. Kirby
Jonathan A. Boynton
**POST KIRBY NOONAN & SWEAT LLP**
600 West Broadway, Ste. 1100
San Diego, CA 92101
Telephone:   (619) 231-8666
Facsimile:   (619) 231-9593

Daniel J. Mogin
Lisa J. Frisella
Chad M. McManamy
**THE MOGIN LAW FIRM, P.C.**
110 Juniper Street
San Diego, CA 92101-1502
Telephone:   (619) 687-6611
Facsimile:   (619) 687-6610
Attorneys for Plaintiff Justin Suarez